[No. 21758. Department Two. July 11, 1929.]

STELLA C. ROUSSEAU, *Individually and as Administratrix of the Estate of Orville M. Rousseau, Respondent*, v. FRANK ROSCHE *et al., Appellants.*[1]

*Hayden, Langhorne & Metzger,* for appellants.

*Edwin H. Flick* and *A. R. Rutherford,* for respondent.

FRENCH, J.—Some time early in the summer of 1925, appellant Rosche, being engaged in the brokerage

[1]Reported in 279 Pac. 80.

business, received oral listings of the properties of the Elbe Lumber & Shingle Company. Thereafter, and about October 1, 1925, Rosche and one Rousseau, the now deceased husband of respondent, formed a sort of an association or connection, the exact nature of which is not very material, officed together in the city of Seattle, and interested themselves generally as brokers in dealing in timber properties. Thereafter Mr. Rousseau, as appears from the record, seems to have been instrumental in interesting one George Miller in this property, which consisted of lands, timber, logging railroad, logging equipment, timber contracts, forming all together quite extensive holdings. A complete and thorough examination of the properties, such as would naturally be made by a prospective purchaser, would, and did, take a considerable period of time. There were various negotiations back and forth, in which negotiations Mr. Rousseau seems to have taken the leading part up to the time of his death, which occurred July 23, 1926. Thereafter, and on July 26, Mr. Rosche wrote the following letter to Mrs. Rousseau:

"Seattle, Washington,
"Mrs. O. M. Rousseau             July 26, 1926.
"My dear Mrs. Rousseau:
"Complying with your request for an outline of the different deals pending that Orville and I have had together before his passing away, they are briefly:
"The Elbe Lumber & Shingle Company. The National Lbr. Mfg. Co. The Green River Lumber Co. (this came to me while Orville was sick), and the Jackson County Oregon Timber that has been submitted to the Brooks-Scanlon Lumber Company at Bend, Oregon. The Hoods Canal Logging Company, George Miller, which was sold October 1, 1925, and still carries an unpaid balance due us from George Miller amounting to $2,550, less July 1st expense of $30.20 and the amount accruing during July, which will be perhaps the same on August 1, 1926. The

office books will show the actual amount of all moneys paid in and paid out, the differences are to be adjusted as per books out of moneys due us from Mr. Miller, all of which you can verify at your leisure.

"It is my wish and intention that I carry on these pending deals and try to close them for your interest as well as my interest, and if you wish, we can adjust the office expenses and furniture up to August 1 in a manner that is satisfactory all around.

"Your interest shall be the same as if Orville were still with me, and I shall candidly talk over and advise you of everything that transpires and you shall have the privilege to verify them as you see fit.

"Sincerely,      Frank Rosche.

"P. S.   Since writing George Miller has revived the Tomsen-Clark Timber Co. property.

"Frank Rosche."

The various negotiations taking place between Miller and the Elbe Lumber & Shingle Company finally and in the late fall of 1926, culminated in the sale of the property by the Elbe Lumber & Shingle Company to Mr. Miller.   Thereafter the Elbe Company agreed to pay certain sums for services rendered, and some cash was paid and notes executed for a portion thereof, the notes running to L. T. Murray, trustee.

This action was commenced by Mrs. Rousseau to recover $12,500, she claiming that amount to be one-half of the commission earned by Rosche and Rousseau and thereafter paid.   The case was tried before the court with a jury, and from a judgment in her favor for the full amount, this appeal follows.

Many assignments of error have been made, but the conclusion we have reached makes it unnecessary to discuss in detail these various assignments.

It is tacitly admitted by both parties, and clearly appears in the record, that up to the time of the negotiations, which covered a period of more than a year, and which culminated in the sale and transfer of the prop-

erty, the only authority or agreement for a commission which Rosche, Rousseau, or anyone else had, was oral. After the sale took place, the following book entry was made on the books of account of the Elbe Lumber & Shingle Company:

"Account no.
"Name Frank Rosche,—L. T. Murray, Trust Agreement.

| 1927 | Folio | Debits | Credits | Balance |
|---|---|---|---|---|
| Feb. 24 to check 3-7-27... | CB | $500 | | |
| Mar. 7 to check 2-24-27... | CB | 250 | | |
| Mar. 23 to check......... | CB | 500 | | |
| Apr. 27 to Chk L. Murray | 15246 | 750 | | |
| Feb. 23 Commission..... | 51 | | $25,000 | |
| July 20 to check......... | 15317 | 5,000" | | |

At about the time this entry was made, the following contract was entered into, which, omitting formal parts, reads as follows:

"WHEREAS, for services rendered, the Elbe Lumber & Shingle Company, a Washington corporation, is and hereby acknowledges itself indebted to L. T. Murray in the sum of ten thousand dollars ($10,000), Frank Rosche in the sum of ten thousand dollars ($10,000), and Charles Lau in the sum of five thousand dollars ($5,000), which indebtedness is to be paid five thousand dollars ($5,000) in cash at the date hereof, the receipt whereof is hereby acknowledged by the undersigned trustee, and the balance in four equal installments of five thousand dollars ($5,000) each, payable respectively six (6), twelve (12), eighteen (18) and twenty-four (24) months after date, which several installments are evidenced by the promissory notes of the said Elbe Lumber & Shingle Company of even date herewith; and

"WHEREAS, it is desirable for the convenience of all the parties to whom said indebtedness is owing that the notes evidencing the same should be made payable to one individual and said parties have agreed upon the undersigned L. T. Murray, to act as trustee for them, to hold said notes, and to collect the same and

receive payment thereof, and distribute such payment to said beneficiaries in the manner hereinafter provided;

Now, THEREFORE, I, L. T. Murray, do hereby acknowledge that I have received the aforesaid cash payment of five thousand dollars ($5,000), and the aforesaid four notes of five thousand dollars ($5,000) each, which are to be held by me upon the following trusts and for the following uses and purposes, that is to say:

"The cash payment of five thousand dollars ($5,000) should be and is contemporaneously herewith paid to the said Frank Rosche to apply upon the indebtedness owing to him of ten thousand dollars ($10,000). The proceeds of the two notes first maturing shall, as and when collected, be paid to the above named L. T. Murray in satisfaction and discharge of the indebtedness owing to him. The proceeds of the other two notes, maturing eighteen and twenty-four months hereafter, shall be paid, as and when collected, in equal shares to the above named Frank Rosche and Charles Lau, to apply upon the aforesaid indebtedness owing to them respectively."

Up until the time of the execution of this contract, all of the agreements between the various parties to this action, and in any way touching upon the question of the commissions, were oral and unenforceable. Whatever rights Rosche had to recover commissions are based upon the above written contract, and only upon the above written contract. That contract provides that Rosche shall obtain ten thousand dollars for services rendered, and the testimony fully warranted the jury in deciding that this sum was given him as commissions for his part in selling their property. Respondent's theory seems to be that there was a conspiracy between Murray, Rosche and Lau to deprive her of her share of the commission, but there could be no conspiracy to deprive her of something to which she was not entitled. And while there is testimony

which warrants the jury in finding that she is entitled to one half of any compensation or commission paid to Rosche for his part in negotiating the sale, yet that amount is all she is entitled to receive. Up until the time of the execution of this instrument, no one was legally entitled to any commission. The oral agreement to pay a commission was, under numerous holdings of this court, unenforceable and void, although the moral obligation was sufficient to support and furnish a consideration for the written contract which was thereafter executed. There is nothing in this record to show that there was, or ever had been, any agreement between Murray, Lau and the plaintiff or her deceased husband. Her rights arise solely by reason of the agreement between her deceased husband and Rosche, or by reason of the letter of confirmation written by Rosche as above quoted. Rosche was entitled to only the amount set forth in the written contract. It is claimed that Murray and Lau were not licensed real estate brokers and had no right to real estate commissions.

Conceding all this, that confers no greater right on Rosche. The entire theory of plaintiff's case, as submitted to the jury under instructions 4 and 5, overlooks the fact that Rosche never became legally entitled to more than ten thousand dollars.

Judgment reversed.

MILLARD, PARKER, MAIN, and HOLCOMB, JJ., concur.